**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tri-State Generation and Transmission Association, Inc.; and Tucson Electric Power Company,<br><br>Plaintiffs,<br><br>v.<br><br>Mitsubishi International Corporation; Mitsubishi Hitachi Power Systems, Ltd.; Mitsubishi Hitachi Power Systems Americas, Inc.; and Misuzu Seiko Company, Ltd.,<br><br>Defendants. | No. CV-14-08115-PCT-NVW<br><br>**ORDER** |

Before the Court is Defendants' Joint Motion to Compel Production of Root Cause Analysis (Doc. 117) and the parties' accompanying briefs. For the reasons that follow, the motion will be granted.

**I.     BACKGROUND**

In 2012, Tucson Electric Power Company ("Tucson Electric") operated a generator in an electric power station on behalf of Tri-State Generation and Transmission Association, Inc. ("Tri-State"). On July 2, 2012, part of the generator failed, causing extensive damage.

Days later, Tucson Electric's general counsel, Todd Hixon, emailed two senior managers in the company, instructing them to retain a third-party investigator to conduct a "root cause analysis" of the generator's failure "in anticipation of litigation." (Doc. 120-1, ¶¶ 2–3.) One of the managers, Arie Hoekstra, retained investigative firm Structural Integrity Associates, Inc. ("Structural Integrity") to conduct the analysis. (*Id.*, ¶ 4; *see also* Docs. 117-1, 117-2.) Hoekstra informed Structural Integrity that the analysis would be for purposes of litigation. (Doc. 120-1, ¶ 4.)

On August 17, 2012, Structural Integrity emailed Hixon and Hoekstra its root cause analysis report (the "Report"). (Doc. 117-2.) Hoekstra forwarded the Report to three Tri-State employees. (*Id.*) Each page of the Report was marked "Confidential – Prepared at the Direction of Counsel – Attorney Work Product." (Doc. 120-1, ¶ 7.)

On July 1, 2014, Tucson Electric and Tri-State (collectively "Plaintiffs") filed the instant lawsuit. (Doc. 1.) They claim that Defendants improperly designed, manufactured, or otherwise handled the part of the generator that failed, and they seek damages for negligence, product liability, and breach of implied warranty. (*Id.* at 4–8.)

In discovery, Defendants asked Plaintiffs to produce all "documents relating or pertaining to any investigation of" the generator's failure. (Doc. 117-3 at 8; Doc. 117-4 at 8.) Plaintiffs did not produce the Report.

Defendants move to compel production of the Report pursuant to Federal Rule of Civil Procedure 37(a)(3)(B). (Doc. 117.) They claim the Report was one of many such reports prepared by Plaintiffs in the ordinary course of business. As evidence, they point out that in September 2012—two months after the generator's failure—the generator was damaged in an unrelated incident, and Tri-State retained Structural Integrity to conduct another root cause analysis. (*See* Docs. 117-7, 117-8.)

In response, Plaintiffs contend that the Report is protected work product under Rule 26(b)(3)(A). (Doc. 120.) They claim the Report was not prepared in the ordinary course of business, because root cause analyses of generator failures are typically handled

- 2 -

internally by Tucson Electric, not by third parties operating at the direction of Tucson Electric's general counsel. (Doc. 120-1, ¶¶ 5–6.) They also argue that production of the Report would constitute premature disclosure of an expert opinion.

Both parties suggest additional documents for the Court to review in camera. Plaintiffs offer to provide the emails Hixon sent to Tucson Electric's senior management in the days following the generator's failure. (Doc. 120 at 2.) Defendants ask that the Court compare the Report with all other root cause analyses prepared by Plaintiffs, in the event that the Court is unpersuaded by Defendants' briefs. (Doc. 121 at 7.)

## II. ANALYSIS

Plaintiffs have not shown that the Report is protected work product or that its production would be premature expert disclosure. No in-camera review is necessary.

### A. Plaintiffs have not shown that the Report is protected work product.

The work product privilege protects from discovery documents prepared by a party or its representative "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3); *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011). The party asserting the privilege bears the burden of proving that the withheld documents were prepared in anticipation of litigation. *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003).

Some documents are prepared for litigation purposes as well as non-litigation purposes. These "dual purpose" documents are protected work product if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Richey*, 632 F.3d at 568 (citation omitted). In applying this standard, courts must consider "the totality of the circumstances" and determine whether the document "would not have been created in substantially similar form but for the prospect of litigation." *Id.* (citation omitted).

The Report is a dual purpose document. On one hand, it was prepared with the possibility of litigation in mind: It was commissioned by Tucson Electric's general counsel expressly for litigation, and each page was marked "Prepared at the Direction of Counsel." On the other hand, the Report serves non-litigation purposes as well. "Following any industrial accident, it can be expected that designated personnel will conduct investigations, not only out of a concern for future litigation, but to prevent reoccurrences [and] to improve safety and efficiency in the facility . . . ." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). In analyzing the root cause of the generator's failure, the Report helps prevent similar failures.

Because the Report serves multiple purposes, whether it is privileged depends on whether it was prepared "because of" the prospect of litigation. This is a close question, but the circumstances indicate the answer is no.

Defendants have offered evidence that Plaintiffs routinely conduct root cause analyses after the generator is damaged. In September 2012, only two months after the incident underlying this lawsuit, the generator was damaged in an unrelated incident, and Plaintiffs retained Structural Integrity to conduct another root cause analysis. (Docs. 117-1, 117-2.) Defendants extrapolate from this example that post-incident root cause analyses like the Report are an ordinary part of Plaintiffs' business, regardless of litigation prospects.

Plaintiffs do not adequately refute this evidence. They attempt to distinguish the Report from other root cause analyses on the grounds that other analyses are typically handled internally by Tucson Electric, not by third parties operating under direction of counsel. (Doc. 120-1, ¶¶ 5–6.) But Plaintiffs do not say how often they conduct root cause analyses. Nor do they identify any substantive difference between the Report and any other root cause analysis they have conducted, including the analysis of the September 2012 incident. Without any evidence of a substantial difference between the

- 4 -

Report and Plaintiffs' other root cause analyses, the Court cannot conclude that the Report "would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 568; *see also Chevron Midstream Pipelines LLC v. Settoon Towing LLC*, Civ. No. 13-2809, 2015 WL 65357, at *9 (E.D. La. Jan. 5, 2015) (observing that plaintiff's attempt to distinguish its usual root cause analyses from the one authorized by its legal department "would be more convincing if there was actually another root cause analysis from which to distinguish the legally chartered one").

The length of time between the Report and the filing of this lawsuit—nearly two years—further indicates that the Report was not prepared "because of" the lawsuit. *See Marceau v. I.B.E.W.*, 246 F.R.D. 610, 614 (D. Ariz. 2007) ("[T]he fact that litigation was not imminent tends to support the argument that the Report was not prepared in anticipation of litigation."). This is especially true here, where the party who commissioned the Report is the same party who filed suit. If Plaintiffs truly anticipated litigation at the time of the Report, it is not clear why they waited so long after receiving the Report to sue.

Plaintiffs point out that the Report was commissioned by legal counsel, was kept private, and was labeled as confidential "Attorney Work Product." While these facts may suggest litigation was anticipated, they are not dispositive. Other courts have deemed root cause analyses non-privileged even though they were similarly commissioned by counsel. *See Carroll v. Praxair, Inc.*, No. 2:05-cv-307, 2006 WL 1793656, at *3–*4 (W.D. La. June 28, 2006); *Chevron*, 2015 WL 65357, at *5–*12.

Plaintiffs also identify facts that, at the time of the generator's failure, led them to believe litigation was likely: (1) there had been other problems with the generator regarding Defendants' workmanship, (2) Tucson Electric did not own the generator but operated it on behalf of Tri-State, and (3) the generator's failure caused significant damage. (Doc. 120-1, ¶ 1.) But these facts do not show that the Report was beyond the ordinary course of business. First, the fact that there had been other problems regarding

Defendants' workmanship means the Report served a non-litigation purpose: to help Plaintiffs decide whether to continue using Defendants' workmanship. Second, the fact that Tucson Electric did not own the generator cannot be determinative; otherwise, all root cause analyses of problems with the generator—even analyses conducted internally with no involvement of counsel—would somehow be in anticipation of litigation. Third, the fact that the generator's failure caused significant damage means the Report served another non-litigation purpose: to prevent further damage. Thus, although the facts identified by Plaintiffs may have increased the likelihood of litigation, none of them indicates that the Report "would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 568.

Plaintiffs claim that another judge in this district held that a report was protected work product under "identical circumstances." (Doc. 120 at 5 (citing *In re Bard Ivc Filters Products Liab. Litig.*, MDL No. 2641, 2016 WL 537587 (D. Ariz. Feb. 11, 2016)).) Not so. In *Bard*, a company's medical product had been associated with several recent deaths, so the company hired a consultant to write a report assessing the product's risks in order to help advise the company on the extent of its legal exposure. 2016 WL 537587, at *1. Although *Bard* bears some factual resemblance to this case, there are two major differences.

First, the consultant's report in *Bard* was different in substance from other reports created by the company. The consultant testified that his report was "an unusual undertaking," and the court noted that the report was "a more extensive and detailed analysis" than what the company normally produced. *Id.* at *3. The company tried to rebut this distinction by presenting examples of the consultant's previous work for the company, but the court found "substantial differences" between that previous work and the report. *Id.* at *5. Here, Plaintiffs have not distinguished the Report from any other root cause analysis they conducted, including the analysis of the September 2012 incident

cited by Defendants. Thus, Plaintiffs have failed to explain why the Report should be attributed to the prospect of litigation, instead of the ordinary course of business.

Second, the consultant's report in *Bard* was commissioned in the face of actual threats of litigation. The reason the company hired the consultant was that the company had received "letters demanding compensation from lawyers and patients who had experienced" injury associated with the company's product. *Id.* at *1. At least one letter raised possible product liability and medical malpractice claims. *Id.* Here, Plaintiffs have not offered similar evidence of impending litigation at the time the Report was prepared. Further, any such evidence would be undercut by the fact that Plaintiffs did not initiate this litigation until nearly two years after receiving the Report. Thus, although *Bard* is well-reasoned, it is not persuasive on these facts.

In sum, Plaintiffs have not shown that the Report "would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 568. Therefore they have failed to demonstrate that the Report was prepared "in anticipation of litigation" for purposes of Rule 26(b)(3).

In reaching this conclusion, no in-camera review is necessary. The Court need not review the emails offered by Plaintiffs, because the Court credits Plaintiffs' description of the emails. The Court need not compare the Report with Plaintiffs' other root cause analyses, as requested by Defendants, because the briefs provide sufficient basis for decision on this motion.

**B.  Plaintiffs have not shown that production of the Report would be premature expert disclosure.**

Plaintiffs also argue that they should not be required to produce the Report because they "have no obligation to prematurely disclose their experts' opinions." (Doc. 120 at 7.) Plaintiffs do not cite a rule in support of this position. They do not specify whether they plan to retain Structural Integrity as an expert or to designate any part of the Report as expert opinion. They cite two cases, but neither is factually analogous. *Weiss*

*v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 63 (E.D.N.Y. 2007); *U.S. ex rel. Tyson v. Amerigroup Illinois, Inc.*, 230 F.R.D. 538, 545 (N.D. Ill. 2005).

Courts have "regularly directed discovery as to information possessed by experts but not developed in anticipation of litigation." 8 Charles A. Wright, Arthur R. Miller, et al., *Federal Practice & Procedure* § 2033 (3d ed., Apr. 2016 update) (collecting cases). As discussed above, Plaintiffs have failed to show that the Report was developed in anticipation of litigation for purposes of the work product privilege. They have similarly failed to show why production of the Report would be premature expert disclosure.

IT IS THEREFORE ORDERED that Defendants' Joint Motion to Compel Production of Root Cause Analysis (Doc. 117) is granted. Plaintiffs shall produce the Root Cause Analysis to Defendants within ten days of the date of this order.

Dated this 15th day of July, 2016.

Neil V. Wake
Senior United States District Judge