**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tri-State Generation and Transmission Association Incorporated, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Mitsubishi International Corporation, et al.,<br><br>Defendants. | No. CV-14-08115-PCT-NVW<br><br>**ORDER** |

Before the Court is a Motion for Reconsideration filed by plaintiffs Tri-State Generation and Transmission Association Incorporated, et al. ("Tri-State"). (Doc. 151.) Tri-State alleges numerous grounds on which the Court previously erred in denying their motion to compel production of a document withheld by defendants Mitsubishi International Corporation, et al. ("Mitsubishi") pursuant to the parties' jointly stipulated clawback agreement. (Docs. 150, 94.) Each of these alleged errors is considered in turn. For the reasons discussed below, Tri-State's motion is denied.

**1. Impeachment**

Tri-State first disputes the Court's finding that Tri-State presented "no authority that impeachment, in any of its manifestations, suffices under Rule 26(b)(3)(A)(ii) to pierce work product." (Doc. 151 at 4.) Tri-State argues that in its original briefing it cited to the U.S. Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 511

(1947), and points specifically to the *Hickman* Court's invocation of the word "impeachment" to support its disagreement with the Court's finding.

The *Hickman* Court, however, mentioned "impeachment" in the context of articulating when written materials prepared by counsel "*may* properly" be discoverable. *Hickman*, 329 U.S. at 511 (emphasis added). In the portion of the opinion Tri-State highlights, the *Hickman* Court notes that such written materials "might be useful for purposes of impeachment or corroboration." *Id.* Precatory dicta such as this do not establish that impeachment "suffices" to justify piercing work-product protection. This Court was correct to conclude that neither *Hickman* nor any other authority cited by Tri-State establishes that "impeachment, in any of its manifestations, suffices under Rule 26(b)(3)(A)(ii) to pierce work product."

**2. Waiver**

Tri-State next disputes the Court's finding that Mitsubishi did not waive work product protection because its actions were "reasonable and timely under the Clawback Order . . . which contemplates that inadvertent disclosures may be likely." (Doc. 151 at 4.) According to Tri-State, the Court erred because it "did not controvert – or even address – plaintiffs' authorities in the Clawback Reply which establish that the failure to object to the introduction of an exhibit waives any privilege, regardless of the presence of a claw-back provision governing inadvertent disclosure – the precise scenario at issue here." In its reply brief, Tri-State argued that "[i]t is well-settled that '[c]law-back provisions . . . govern only waivers by inadvertent disclosure.' . . . 'Accordingly, failure to timely object to the introduction of an exhibit waives any privilege, regardless of the presence of a claw-back provision governing inadvertent disclosure.'" (Doc. 138 at 13 (emphasis and citations omitted).)

However, the authority Tri-State cites for this "well-settled" proposition consists of three unpublished district court opinions from other districts, one of them not even in this circuit. This Court is not bound by those authorities. Tri-State has cited no case law

from any controlling jurisdiction that undermines this Court's previous conclusion.

### 3. Reasonableness

Tri-State next contests this Court's finding that Mitsubishi "acted reasonably in completing the deposition" despite becoming aware of the possible inadvertent disclosure at the deposition itself.  Tri-State disputes that Mitsubishi acted reasonably in "abstain[ing] from asserting any objections whatsoever during two hours of examination about [the] document [at issue]," and flags *United States v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973), as "controlling law on the subject of waiver." (Doc. 151 at 5.)  Tri-State points to *Gurtner* for the proposition that "[o]nce the subject matter is disclosed by a knowing failure to object there is nothing left to protect from disclosure" (Doc. 151 at 5), but offers no explanation of what the Court is supposed to take away from this principle.

Whatever the intended takeaway, these objections do not controvert the Court's finding that Mitsubishi acted reasonably.  Tri-State omits from its argument this Court's finding that the deposition, conducted in Japanese, was "scheduled under the demanding requirements of Japanese law." (Doc. 150 at 2.)  To suspend the deposition under the circumstances in order to evaluate clawback options would have jeopardized a proceeding not readily conducive to rescheduling or continuation at a later date.  The Court reiterates that it was reasonable under the circumstances to have waited until the next morning to contest the document.

Furthermore, *Gurtner* is both legally and factually distinct from this case.  Legally, *Gurtner* dealt with the attorney-client privilege, not the work-product doctrine, a related but distinct notion not necessarily subject to the same guiding principles.  And factually, *Gurtner* was a case where the defendant made an untimely objection while a witness was on the stand before the jury at trial, not amid pre-trial discovery.  *Gurtner*, 474 F.2d at 299.  The proposition cited by Tri-State ("Once the subject matter is disclosed by a knowing failure to object there is nothing left to protect from disclosure") pertains to jury trials, not pre-trial discovery.  In any case Mitsubishi's actions at the deposition did not

amount to a "knowing failure to object."

Tri-State's arguments therefore fail to undermine the Court's conclusion that Mitsubishi acted reasonably in objecting the following morning instead of during the deposition itself.

### 4. Discoverable By Other Means

Next, Tri-State opposes the Court's determination that "[a]ll the subjects of the factual recitations in the disputed documents are discoverable by other means." They contend that such a ruling is "manifestly unjust and/or reflects a misapprehension of the facts" because the fact discovery deadline had passed more than a month before the Court's order. (Doc. 151 at 5.)

This ignores the ample time Tri-State had to conduct discovery. Tri-State never claims they were unaware of the discovery deadline, or that they did not have the opportunity to conduct discovery prior to (and including) the deposition at issue. The information Tri-State seeks has all along been discoverable by other means regardless of whether they capitalized on all opportunities to acquire it.

### 5. Characterization of Plaintiff's "Real Intended Use" of the Documents

Tri-State next contends that the Court was incorrect to conclude that "[p]laintiffs' real intended use of the documents is to show that the Defendants thought the valve was supposed to be a stopper . . . ." Tri-State points to arguments in its briefing that addressed "the critical admissions against interest about the potential for over-rotation of the valve and the defendants' failure to warn plaintiffs that over-rotation could crash the turbine." (Doc. 151 at 6.)

Whether or not the Court comprehensively characterized Tri-State's intentions does not bear on the outcome of this motion. Rule 59 does not counsel reconsideration because one party disagrees with an immaterial characterization of its motives.

**6. Ordinary vs. Opinion Work Product**

Tri-State next argues that the Court "apparently determined *sua sponte*" that portions of the disputed statements "are 'opinion' work product to which no discovery exception applies," this despite the fact that, in Tri-State's view, the parties do not dispute that the document at issue "amount[s] to 'ordinary' work product, which is entitled to only the most minimal protection." (Doc. 151 at 6.)

The Court is not aware of anywhere in the record—and indeed Tri-State points to nothing—in which Mitsubishi concedes that the disputed document is "ordinary" work product. Regardless, Tri-State's attribution lacks what they themselves characterize as the hallmark of "ordinary" work product: "raw factual information" (Doc. 132 at 17). Tri-State instead points to various conclusions throughout the document—Mitsubishi's reference to the tab as a stopper and other internal observations about the nature of the device (Doc. 151 at 6-7; Doc. 132 at 18-19)—and simply labels these as facts. This sleight-of-hand gets Tri-State nowhere. Mitsubishi's opinions and conclusions are opinions and conclusions, not facts. The Court made no error in this regard.

**7. Characterization of Plaintiffs' Position**

Tri-State next contends that the Court incorrectly "assumed plaintiffs' position to be that 'the valve was supposed to be a stopper.'" (Doc. 151 at 7 (quoting Doc. 150 at 2).) Based on this, Tri-State contends that the Court "misapprehended the facts," and that correctly understanding the nature of the device in question "is critical to the evaluation of plaintiffs' arguments." (Doc. 151 at 7.)

This argument amounts to a failed exercise in cherry-picking. Unfortunately for Tri-State, the full sentence from which the quote was taken reads as follows:

> Plaintiffs' real intended use of the disputed documents is *to show that the Defendants thought* the valve was supposed to be a stopper because they themselves used the word "stopper" (the interpreter's word in translating from Japanese).

(Doc. 150 at 2 (emphasis added).)  The Court's order took no position on what Tri-State believes the stopper to be.  The order did take a position on what Tri-State wanted from the document: to show that *Mitsubishi* believed the valve was supposed to be a stopper.  Even if that incorrectly states why Tri-State wants to the disputed document, it still attributes no position to Tri-State on whether the stopper is a valve.  The Court made no misapprehension of the facts.

**8.  Undue Hardship**

Finally, Tri-State takes issue with the Court's purported conclusion "that 'undue hardship' only exists 'when one party has investigated facts that are no longer viable for the other party to investigate, such as because of loss or destruction of tangible things.'" (Doc. 151 at 7.)  Tri-State contends this definition is "unduly restrictive, manifestly unjust and contrary to established law."

The Court's order did not say that undue hardship "only" exists where facts investigated by one party are no longer viable for investigation by the other.  The order simply called this "the *paradigm* of 'undue hardship'" (emphasis added), which it is.  Any confusion over the meaning of "paradigm" could have been dispelled by consulting a dictionary.  *See, e.g.*, *Paradigm Definition*, Merriam-Webster Online http://www.merriam-webster.com/dictionary/paradigm (last visited Dec. 20, 2016) (defining "paradigm" as "example, pattern; *especially*: an outstandingly clear or typical example or archetype").

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Reconsideration (Doc. 151) is denied.

Dated this 20th day of December, 2016.

_____
Neil V. Wake
Senior United States District Judge